IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| CAROLYN RENEE KNIGHT, | ) | CIVIL ACTION NO. 9:15-1512-JMC-BM |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Supplemental Security Income ("SSI") on August 4, 2011 (protective filing date),[1] alleging disability beginning January 1, 2007, due to bipolar disorder, anxiety, migraines, back pain, high blood pressure, high cholesterol, auditory hallucinations, and learning difficulties. (See R.pp. 10, 148, 163). Plaintiff's claim was denied both initially and upon

_____

[1]Although the definition of disability is the same for both Disability Insurance Benefits ("DIB") and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005); see also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 2, 2013 (R.pp. 24-55). The ALJ thereafter denied Plaintiff's claims in a decision issued December 13, 2013 (R.pp. 10-20). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].



Hays, 907 F.2d at 1456 (citing <u>Laws v. Celebrezze</u>, 368 F.2d 640 (4th Cir. 1966)); <u>see also</u> <u>Hepp v.</u> <u>Astrue</u>, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. <u>Laws</u>, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" <u>Blalock v.</u> <u>Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

### Medical Record

the record reflects that Plaintiff had a consultative examination conducted by Dr. William Gore, a psychologist, on February 21, 2008. Plaintiff has been brought to the appointment by the pastor who ran a shelter where she lived. Plaintiff stated she did not know why she was there, and she was unable to answer simple questions. Dr. Gore believed that this "immediately had a quality of contrivance," and thought that Plaintiff gave an "exaggerated display" despite there not being an appearance of psychotic process or major cognitive impairments. Plaintiff also cried repeatedly throughout the examination, which Dr. Gore noted "appear[ed] to be strategic and directed in response to attempts to get her to clarify information and seem[ed] focused on emphasizing deficits." Dr. Gore opined that Plaintiff's language, vocabulary, sentence structure, syntax, and grammar all indicated borderline intellectual functioning, but that "no clear conclusion can be drawn regarding any diagnosis." He thought that there were "multiple qualitative and quantitative signs of embellishment, which render[ed] her symptoms report and presentation unreliable." Dr. Gore



concluded that "no functional statement can be offered", and he therefore made no diagnosis. (R.pp. 193-195).

Two and one-half years later, in July 2010, Plaintiff complained to a provider at the Lexington County Mental Health Center (Lexington MHC) that she had difficulty sleeping. Plaintiff stated that she had graduated high school with average grades, that she might have been in special education, and did not have much employment history. Initial assessment was psychotic disorder not otherwise specified (NOS) and depressive disorder NOS. Plaintiff's GAF was 57,[2] and the provider thought that Plaintiff would require extensive therapy and medication. (R.pp. 235-238).

Dr. Kimberly Harrison, a psychologist, examined Plaintiff on May 18, 2011, at the request of the state agency. Plaintiff reported that she graduated high school, but had repeated the first grade and was in "a special class" in high school for one year. She stated she had frequent problems because she did not like being told what to do. Although she briefly attended Midlands Technical College and a vocational program in typing, she did not finish either. Plaintiff stated that she had worked briefly at a fast food restaurant, a company that manufactured screen doors, and as a motel housekeeper (which was her longest job at one to two months). She said she had difficulty in crowds, did not like being around family, and thought that family members were talking about her. Plaintiff reported a history of depression, suicide attempts, and injuring herself to cope with negative emotions; that she lived with her mother and father but did not do much around the house; that her

---

[2]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF score between 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).



drivers license was suspended due to a DUI and she did not drive; and that she sometimes attended church but only really socialized with a "kinda sorta" boyfriend. (R.pp. 196-198).

Intelligence testing revealed a full-scale score of 63, verbal comprehension of 58, perceptual reasoning score of 77, working memory score of 66, and processing speed score of 74. Achievement testing scores were "generally consistent with, or higher than would be expected, based on her estimated intellectual functioning." Dr. Harrison diagnosed Plaintiff with borderline intellectual functioning, borderline personality disorder, depressive disorder NOS, and assigned her a GAF of 55. Dr. Harrison thought that Plaintiff's "level of adaptive functioning and prior employment history suggest[ed] [that Plaintiff] likely functions at a level above the range of mild mental retardation." (R.p. 196-200).

Dr. Harrison administered the test of memory malingering to Plaintiff on February 1, 2012, again at the request of the state agency. Test results indicated that Plaintiff was "not attempting to feign or exaggerate memory impairment." (R.pp. 203-207).

On February 9, 2012, state agency psychologist Leslie Burke reviewed the record and opined that Plaintiff's impairments did not meet or equal a Listing[3] (specifically considering Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.08 (Personality Disorders)). As to the "B" criteria of these Listings, Dr. Burke opined that Plaintiff had moderate difficulties in her activities of daily living; in maintaining social functioning; and in maintaining concentration, persistence, or pace. In his mental RFC assessment, Dr. Burke opined that Plaintiff had the ability

---

[3]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925.



to understand and remember short and simple instructions; perform simple tasks without special supervision; maintain a regular work schedule but might miss an occasional work day due to psychological symptoms; sustain appropriate interaction with peers and co-workers without significant interference in work; perform better in a job setting that did not require ongoing interaction with the public; and make simple work-related decisions, request assistance from others, and use available transportation. (R.pp. 65-67, 69-71).

On March 1, 2012, Dr. Archibald Wesley Hursey, Jr. examined Plaintiff at the request of the state agency for complaints of back pain, high blood pressure, and migraines. (R.pp. 208-210). Plaintiff was tearful during her interview, and stated that she had worked as a hotel maid until being treated for mental impairments on an inpatient basis about a year before. Plaintiff complained of low back pain, relieved by Tylenol, that occurred every two weeks and limited her ability to bend and lift. She also complained of migraines with associated photophobia, which were slightly relieved by Tylenol and occurred about once a week for half a day at a time. Dr. Hursey noted that x-rays of Plaintiff's lumbar spine revealed only mild scoliosis but with "a significant amount of lipping anteriorly at L4 and some lipping at L5 laterally." A physical examination was essentially normal, and Dr. Hursey's final impressions were defective distant vision, uncorrected; history of bipolar disorder, on no medication; and history of elevated cholesterol, on no medication. (R.pp. 208-210, 213).

On March 16, 2012, state agency physician Dr. Rebecca Meriwether reviewed Plaintiff's records and opined that Plaintiff did not have any exertional, postural, or manipulative limitations. She did note that Plaintiff had limited right eye near and far acuity which was likely



correctable, but which uncorrected kept Plaintiff from performing work requiring very fine vision or prolonged visual work.  (R.pp. 63-64, 68-69).

Plaintiff returned to the Lexington MHC on April 30, 2012, requesting help with depression.  In the waiting room, Plaintiff was observed talking to a stuffed animal.  Plaintiff reported that she lived with her parents, sometimes thought the television was talking to her when no one else was in the room, and that she slept poorly.  Plaintiff admitted she drank alcohol regularly and also occasionally used marijuana.  Her medications included Latuda and Celexa.  Plaintiff was diagnosed with schizoaffective disorder due to symptoms of auditory hallucinations, paranoia, and insomnia, and her GAF was estimated at 50.[4]  The case manager thought that "a big part of patient's problem is related to alcohol use, but she also has [audio-visual hallucinations] which may not be related to alcohol dependence."  It was recommended that she cut back on drinking and that her Latuda be increased.  (R.pp. 233-234).

On June 18, 2012, Plaintiff reported to a Lexington MHC provider that she was "doing OK" on her medication and did not have the same feelings she had before.  It is not clear whether she was taking Latuda, as she failed to pick up medication samples that were previously offered to her.  (R.pp. 231-232).

On June 26, 2012, State agency psychologist Dr. Kevin King opined that Plaintiff did not meet Listings 12.02, 12.04, or 12.08, and as to the "B" criteria of these Listings, that she had moderate restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  Dr. King

---

[4]A GAF score between 41-50 is classified as reflecting "serious symptoms" or "serious difficulty in social or occupational functioning".  Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).



opined that Plaintiff was able to understand and remember short and simple instructions; perform simple tasks without special supervision; maintain a regular work schedule but might miss an occasional day due to psychological symptoms; sustain appropriate interaction with peers and coworkers without significant interference in work; would perform better in a job setting that did not require ongoing interaction with the public; and could make work related decisions, request assistance from others, and use available transportation. (R.pp. 79-81, 84-86).

On June 28, 2012, state agency physician Dr. William Lindler opined that Plaintiff did not have any exertional, postural, or manipulative limitations, although he thought that Plaintiff's limited right eye near and far acuity limited her ability to perform work requiring very fine vision or prolonged visual work. (R.pp. 82-84).

Plaintiff returned to the Lexington MHC on January 15, 2013, at which time she was tearful and reported she was not doing well, felt more depressed recently, and had bouts of frequent crying. She also reported that she was angry all the time, slept poorly, and heard voices. She had run out of her prescribed Celexa, but did not think it was helping her. Plaintiff was still taking Latuda, but did not feel it had been helpful either. Her GAF was 50. (R.p. 227-228).

On March 20, 2013, Plaintiff reported to a provider at the Lexington MHC that she thought Symbyax (which she had run out of) was helpful with a reduction in auditory hallucinations and better sleep, but she still struggled with anger. Plaintiff said that she lived with her fiancé at times and at other times with her mother. She submitted paperwork for a prescription assistance program. Plaintiff's GAF was assessed as 50.



**Discussion**

A review of the record shows that Plaintiff was fifty-five years old at the time of the ALJ's decision and has a high school education. (R.pp. 19, 148, 164). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[5] of early lumbar degenerative changes, impaired vision with need for glasses, borderline intellectual functioning, bipolar disorder, anxiety disorder, and personality disorder (R.p. 12), she nevertheless retained the residual functional capacity ("RFC") to perform medium exertional work,[6] with the non-exertional limitations of no work with dangerous machinery with exposed moving parts, no work requiring fine visual acuity, only unskilled work, no direct interaction with the public and only occasional team-type interaction with coworkers, no requirement to make complex detailed decisions, and no requirement to adapt to more than simple and gradual changes in the workplace. (R.p. 14). At step four, the ALJ found that Plaintiff had no past relevant work. (R.p. 19). However, the ALJ obtained testimony from a vocational expert ("VE")

---

[5]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[6]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



and found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy with this RFC, and was therefore not entitled to disability benefits. (R.pp. 19-20). See (R.pp. 52-54).

Plaintiff asserts that in reaching her decision, the ALJ erred by failing to consider whether she met or equaled Listing 12.05C (Intellectual Disability), by failing to consider all of her impairments in combination, and by failing to properly evaluate her RFC. After careful review and consideration of the arguments presented, for the reasons set forth hereinbelow, the undersigned is constrained to agree with the Plaintiff that the ALJ committed reversible error as to her step four and five determinations, as the ALJ's findings are not in compliance with the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).[7]

Specifically, the ALJ found in her decision that, at step three, with regard to concentration, persistence or pace, Plaintiff had moderate difficulties. (R.p. 13). To account for this limitation (as well as her findings that Plaintiff also had moderate difficulties in social functioning and in her activities of daily living) the ALJ found that Plaintiff could perform unskilled work without direct interaction with the public and only occasional team-type interaction with coworkers; no complex, detailed decisions; and no more than simple, gradual changes in the workplace. (R.p. 14), see also (R.p. 52). This was not an atypical conclusion, as restricting a claimant to unskilled work not requiring complex or detailed decisions to account for a moderate restriction in concentration, persistence or pace is a finding that has found support in previous case law. Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [Finding that by restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate

---

[7]It is noted that Mascio was not issued until *after* the ALJ's decision in this case.

10



limitation in maintaining concentration, persistence or pace]; <u>McDonald v. Astrue</u>, 293 F. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]; <u>see also</u> <u>Hyser v. Astrue</u>, No. 11-102, 2012 WL 951468 at * 6 (N.D.Ind. Mar. 20, 2012)[Finding limitation to jobs "involving only occasional contact with public and co-workers" accounted for moderate social functioning].  Indeed, the undersigned has upheld such a finding as sufficient in some earlier decisions.

However, subsequent to the issuance of the ALJ's decision in this case, the Fourth Circuit decided in <u>Mascio</u> that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  <u>Mascio</u>, 780 F.3d 638, quoting <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011).  That is what the ALJ did in this case.  (R.pp. 14, 52).  After <u>Mascio</u>, however, such a summary finding is no longer sufficient, as the Fourth Circuit held in <u>Mascio</u> that the ability to perform simple, routine tasks is not the same as having the ability to *stay on task*, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace. <u>Mascio</u>, 780 F.3d 638.  As the ALJ did not have the benefit of the Fourth Circuit's decision in <u>Mascio</u> to guide her at the time she reached the decision in this case, no discussion or finding was made with respect to Plaintiff's ability to stay on task for an eight (8) hour workday in light of her moderate limitation in concentration, persistence or pace.  This omission is particularly important here, where the ALJ gave "great weight" in her decision to the opinions of the state agency physicians who opined that Plaintiff could "perform *short* and simple tasks" with her condition; (R.p. 18) (emphasis added); while the VE specifically testified that, if Plaintiff's inability to properly



concentrate prevented her from staying on task on a sustained basis, she would not be able to perform even the simple, unskilled work identified in the decision. (R.p. 54).

The Commissioner appears to argue that, because Dr. Burke and Dr. King opined that Plaintiff had no significant limitation in her ability to sustain an ordinary routine without special supervision, this would justify a finding that Plaintiff could stay on task and perform the jobs indicated. However, Dr. Burke and King also opined in their mental residual functional capacity assessments that Plaintiff was moderately limited in her ability to perform activities within a schedule and maintain attendance, and moderately limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R.pp. 70-71, 84-85). In any event, this argument for finding the decision to be consistent with <u>Mascio</u> is set forth by the Commissioner in her brief, it is not a finding made by the ALJ in her decision. <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision].

While it may be that the ALJ will find, based on the evidence, that Plaintiff's moderate impairment in persistence, pace, and being able to concentrate does not affect her ability to stay on task sufficient to perform the unskilled work identified in the decision; <u>See</u> <u>Mascio</u>, 780 F.3d at 638 [noting that the ALJ may be able to explain why a concentration, persistence, or pace limitation did not translate into a limitation in the RFC ("[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]"), but finding that remand was appropriate because the ALJ gave no explanation]; she did not make that

12



determination or finding in her decision, and this Court may not do so in the first instance. Pinto, 249 F.3d at 847 [Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009)["Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have thinking."]. Therefore, this case must be reversed and remanded for consideration of Plaintiff's RFC in light of the updated case law and requirements for considering Plaintiff's ability to work in light of her moderate limitation in concentration, persistence or pace.

       With respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

### Conclusion

       Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for reevaluation of the evidence as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala v. Schaefer, 509 U.S. 292 (1993).



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

May 10, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

15

